Morgan, J.
Section 1 of act No; 3, session acts of 1874, page 39, provides: “That for the purpose of consolidating and reducing the *578 floating and bonded debt of tbe State, the Governor, Lieutenant Governor, Auditor, Treasurer, Secretary of State and Speaker of the House of Representatives are hereby authorized to cause to be prepared, and to issue bonds, to be known as consolidated bonds of the State of Louisiana, of the denominations of one hundred, five hundred and one thousand dollars, to the amount of fifteen millions of dollars, or so much thereof as may be necessary, all payable forty years from the first day of January, 1874, and all to be numbered consecutively, and made payable to bearer, and to bear interest at the rate of seven per cent, per annum, payable semi-annually in the city of New York and city of New Orleans' on the first day of July and January of each year, and coupons for such interest shall be annexed thereto; said interest and principal to be payable in lawful money of the United States.”
Section 3 provides : “ That the bonds authorized by section one shall be signed by the Governor, Auditor and Secretary of State, and the coupons shall be signed by the Auditor and Treasurer; and when so prepared said bonds shall be exchanged by the board of liquidation for all valid outstanding bonds of the State and all valid warrants drawn previous to the passage of this act by the respective Auditors of Public Accounts of the State on the Treasurer thereof, except warrants issued by the Auditor in payment of the constitutional officers of the State, at the rate of sixty cents in consolidated bonds for one dollar in outstanding bonds and all valid warrant’s; provided, that the holder of any bond or valid warrant rejected by a majority of said board may apply by petition to the proper court for relief, and if final judgment shall be rendered in his favor against said board, it shall be the duty of said board to fund his said claim in bonds at the rate provided by this act.”
The same Legislature, at the same session, proposed an amendment to the constitution of the State. The first number of this amendment is as follows :
“The issue of consolidated bonds authorized by the General Assembly of the State, at its regular session in the year 1874, is hereby declared to create a valid contract between the State and each and every holder of said bonds, which the State shall by no means and in no wise impair. The said bonds shall be a valid obligation of the State in favor of any holder thereof, and no court shall enjoin the payment of the principal or interest thereof, or the levy and collection of the tax therefor; to secure such levy, collection and payment, the judicial power shall be exercised when necessary. The tax required for the payment of the principal and interest of said bonds shall be assessed and collected each and every year until the bonds shall be *579 paid, principal and interest, and the proceeds shall be paid by the Treasurer of the State to the holders of said bonds as the principal and interest of the same shall fall due, and no further legislation or appropriation shall be requisite for the said assessment and collection and for such payment from the treasury.”
This amendment was adopted, and it now forms part of the organic law of the State.
The Legislature, at an extra session held in 1875, act No. II, p. 110, enacted:
■ “ That the Bo'ard of Liquidation constituted by the second section of act No. 3, approved January 21, 1874, entitled an act to provide for funding obligations of the State by exchange for bonds, etc., is hereby prohibited from issuing any bonds in exchange for any outstanding bonds of the State or warrants drawn previous to the passage of said act by the respective Auditors of Public Accounts of the State on the treasury thereof, forming 'items of State indebtedness, the legality or validity of which may have been, or may hereafter be, questioned, until said bonds or warrants shall first, by final decree of the Supreme Court of the State of Louisiana, have been declared legal and valid obligations against the State of Louisiana, and that the same were issued in strict conformity to law, and not in violation of the constitution of this State or of the United States, and for a valid consideration; that any person assessed for State taxes is hereby authorized in his own name to institute suit or to intervene in any suit which may now or hereafter be instituted in a court of competent jurisdiction in the parisli of Orleans against said Board of Liquidation, to test the legality and validity of any issue of bonds of the State, or warrants drawn previous to the passage of said act No. 3 by the Auditor of Public Accounts on the State treasury, the legality and validity of which may have been or may hereafter be questioned, and to inquire into the consideration for which said bonds or warrants may have been issued, and in his own name to prosecute such suit or suits to a final termination; and until the legality and validity of each and every issue of bonds and warrants as aforesaid shall have been finally passed upon and determined by the Supreme Court of the State of Louisiana; and that in order to facilitate and bring to a speedy determination all matters in controversy, as provided for in this act, every suit hereby instituted shall have precedence in all courts over all other cases, and to be fixed by motion of either party; the day of trial to be named in the motion fixing such cases for trial to give way thereto ; that all costs incurred in any suits under this act, to the extent of one suit carried to a final issue, as to each separate issue of bonds or warrants, the legality, validity or consideration of which are questioned, if the court *580 shall so determine, shall be borne by the State of Louisiana, and which costs, on approval of the court, shall be warranted for by the Auditor of Public Accounts on the State Treasurer, to be paid out of any funds in the treasury not otherwise appropriated; provided, that any holder or holders of bonds or warrants whose legality, validity or consideration is questioned in any suit or suits brought under the provisions of this act, may intervene in said suit or suits, and that the costs of such interventions shall abide the results of the suits in which such interventions shall be filed.”
Section two provides, “ That the following issue of b'onds and war- ■ rants, so far as the same may be now outstanding, are declared questioned and doubtful as to their legality and validity, and said board of liquidation are hereby prohibited from issuing bonds authorized by section one of act No. 3 of 1874, in exchange therefor until the legality, validity and consideration of the same shall have been tested under the provisions of this act, and a final decree rendered as to their legality, validity and consideration, to wit:
Here follows a list of the bonds whose validity is questioned, among which are to be found:
“ Bonds under act No. 115, approved March, 1867, for expenses of building levees, $4,000,000; bonds under act No. 32, approved February 25, 1870, for work done or to be done on the levees, $2,960,000.”
The relator asserts that he is the holder, for various parties, of 149 bonds, known as the levee bonds, for $1000 each, and 38 bonds of $1000 each, issued for “ paying certain debts” under the act of fifteenth February, 1866. He avers that it is made the duty of the Board of Liquidation to cause to be prepared and to issue bonds to be known as the consolidated bonds of the State of Louisiana, which bonds, when so made by the board and signed, shall be exchanged by the board for all valid outstanding bonds of the State, and all valid warrants. He proves, without objection, although he does not allege it, that he presented his bonds to the Board of Liquidators, who declined to exchange them for bonds as provided in the act of twenty-sixth January, 1874, upon the ground that they were prohibited from doing so under the act of seventeenth May, 1875. He prays fór a mandamus compelling the Board of Liquidators to fund his bonds. He avers that the act entitled ,£an act supplemental to the act approved January 26, 1874, is in conflict with act No. 3 of 1874, to which it is a supplement, and is “an attempt on the part of the Legislature to control the aetion of the Funding Board, and thereby deprives the holders of the bonds and other evidences of debt of their rights as defined under act No. 3 of 1874, and is, to that extent, a violation of the compact entered into *581 between the people of the State and the bondholders, and is, to that extent, nneonstitutional, null and void.”
Critically considered, he rests his right to force the Board of Liquidation to fund his bonds upon the sole ground that the act of the Legislature,. No. 11, of the session of 1875, is unconstitutional.
No objection is made to the form of this-proceeding or to the insufficiency of the allegations in the petition. The issue is made up by the answer of the board as well as the State, which denies the validity and legality of the bonds. By the answer, the issue presented is—
First — -Whether the act No. 11, acts of 1875, conflicts with the amendment to the constitution adopted in 1874, which we have already quoted, and the act No. 3 of the acts of 1874, which this amendment, was intended to make irrepealable and unalterable by a subsequent Legislature.
The act of 1874, authorized the funding of the valid debt of the' State, and authorized the Board of Liquidation to issue bonds therefor. The validity of the obligations presented to the board was to be judged of, in the first instance, by the board, with the right of appeal to the courts by any claimant whose bonds the board refused to fund. The amendment to the constitution provided that all bonds issued by the board should be a valid obligation of the State in favor of the holder thereof, and prohibits any court from enjoining the payment of such bonds or the interest due thereon. All holders of bonds, therefore, issued by the board under this act-, are protected in their rights. The Legislature can pass no law affecting their validity, for this would be impairing a contract already consummated. But we do not understand that this prohibition extends beyond the bonds issued in conformity with the statute under consideration. The relator has made no contract with the State under this act. His bonds are not bonds issued under this statute. He simply claims the benefit of its provisions. He asks that bonds be given him in exchange for those which he now holds. By the first act the board was given the power to pass, primarily, upon the validity of his bonds. They certainly would not have been funded if the board considered them invalid. If the decision had been against him he would have appealed to the courts, if he had felt himself wronged. If the courts had come to the conclusion that-his debt was a valid one, the board would have been com- ■ polled to issue the bonds as provided for by the act. In the last resort, therefore, the decision of his rights depended upon the courts. It was only those obligations which the board considered unquestionable which it was authorized to issue bonds for.
Now the Legislature has seen proper to take away the absolute determination of the validity of the claims which were likely to be *582 presented under this act from the Board of Liquidation, and give to any taxpayer the right to have the question of their validity passed upon by the courts.
It has also seen proper to designate certain outstanding bonds and other evidences of debt as suspicious, and to prohibit the board from funding them until their validity shall have been passed upon by the courts. There is nothing that we can see which is unconstitutional in an act of the Legislature which gives to the citizens of the State the right to see that no claim set up against it shall be paid until the validity thereof is ascertained.
There is no violation of any contract with the relator by the act in question, because at the time the act was passed no contract existed, under the act of 1874, between him and the State. The bonds he holds now are in the same condition that they were prior to the passage of either of the acts now under consideration.
We therefore deeide that the act No. 11 of the acts passed at the extra session of the Legislature of 1875, and approved May 17, 1875, does not conflict with the amendment to the constitution adopted in 1874, and is therefore constitutional.
Second — The next question is whether the bonds presented by the relators are valid obligations against the State.
The only bonds before us are certain bonds issued under act No. 32, approved February 25, 1870, for work done or to be done on the levees, and under act No. 115, approved March 26, 1867, for expenses of building levees. Also some bonds alleged to have issued under act of fifteenth February, 1866, “ for the purpose of paying certain debts.” And we desire to be distinctly understood that we are expressing no opinion upon the validity of any bonds except those before us and in the hands of the relator.
In so far as the levee bonds are concerned, the evidence satisfies us that those in the possession of the relator are valid obligations against the State, and that they should be funded.
As regards the bonds issued, as alleged, under act of fifteenth of February, 1866, we have only to say that there is no act of the Legislature of that date which authorizes the issue of any bonds. There is an act of the twelfth February, 1866, which authorizes an issue. Probably these are the bonds now sought to be funded, but the allegations in the petition are that they were issued under a certain act, and the bonds bear date of the act under which they are alleged to have been issued. There is a discrepancy here in the proof which we can not supply.
It is therefore ordered, adjudged and decreed that in so far as relates to the bonds alleged to have been issued under the statute, approved *583 fifteenth February, 1866, that the judgment of the district court be avoided, annulled and reversed, and the application of the relators be dismissed as in case of nonsuit.
And it is further ordered, adjudged and decreed, that as regards the bonds in the possession of the relator, issued under act No. 115, approved March 26, 1867, for expenses of building levees, and under act No. 32, approved February 25, 1870, for work done or to be done on the levees, and described in his petition, and in his possession, that the judgment of the district court be affirmed.